IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD HALL, | : | CIVIL NO. 1:CV-09-1907 |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| SGT. RHOADES, et al., | : | |
| Defendants | : | |

**M E M O R A N D U M**

Ronald Hall ("Hall"), an inmate confined at the State Correctional Institution at Waymart, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. Remaining as Defendants are Sergeant William Rhoades and Joseph Stagl, both correctional officers at the State Correctional Institution at Albion ("SCI-Albion"), Pennsylvania. Hall alleges that Defendants were deliberately indifferent to his serious medical need during his transport from SCI-Smithfield to SCI Houtzdale on October 2, 2007. Presently before the Court for consideration is Defendants' motion for summary judgment. (Doc. No. 51.) For the reasons that follow, the motion will be deemed unopposed and granted.

**I.    Background**

Hall alleges that he had knee surgery on October 2, 2007, at Somerset Hospital.[1] He claims that he was under post-surgery medical orders to place minimum weight on his surgery leg and to use crutches for four (4) weeks. Because no crutches were available, he states he was given a wheelchair. The following day, while awaiting transport from SCI-Smithfield back to his assigned prison (SCI-Houtzdale), he alleges that Defendants forced him out of his

---

[1] The complaint in this matter consists of Documents 1 and 18. (See Doc. No. 24.) In his complaint Hall alleges that the surgery occurred on October 1, 2007, but has since agreed that the date of the surgery was October 1, 2007. (Doc. No. 54 at 20.)

wheelchair, shackled his legs and hand, and ordered him to walk up the stairs onto the bus. (Doc. 1, Compl. at 2.) When he complained to Defendants about his pain from having to walk, he was told by Defendant Rhoades to "stop crying like a baby. (Id. at 3.) When he arrived at SCI-Houtzdale, his knee was swollen and he was helped from the bus. He was placed in the infirmary and provided pain medication. Hall claims Defendants had the option of transporting him back to SCI-Houtzdale in a wheelchair accessible van, but failed to do so. He seeks compensatory and punitive relief.

Following the denial of their motion to dismiss, Defendants Rhoades and Stagl filed an answer to the complaint on October 3, 2011. (Doc. No. 34.) Discovery ensued and, following the resolution of a motion to compel filed by Hall, Defendants filed the pending motion for summary judgment on November 20, 2013. (Doc. No. 51.) A supporting brief, statement of material facts and appendix were filed at the same time. (Doc. Nos. 52-54.) Plaintiff did not oppose the motion, but rather, filed a motion seeking the appointment of counsel. On December 10, 2013, the Court denied Hall's request for counsel. In addition, Defendants were directed to re-serve Hall with their summary judgment documents because it appeared from the record that he had been transferred from the prison where the documents were served prior to his receipt of the same. (Doc. No. 57.) The Court also ordered Hall to file his brief, statement of facts and evidentiary materials in opposition to Defendants' motion within thirty (30) days. He was warned that his failure to do so would result in Defendants' motion being deemed unopposed and addressed on the merits. The relevant time period has expired, and Hall has failed to file any opposition to the motion. As such, the motion for summary judgment will be deemed unopposed and addressed.

**II.     Standard**

Federal Rule of Civil Procedure 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. A fact is "material" if it will "affect the outcome of the suit under the governing law .... " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 250.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence. All reasonable inferences are also to be resolved against the moving party. Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, "a mere scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 249. In the face of such evidence, summary judgment is still appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party ...." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a fair-minded jury could reasonably decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989)(quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56©). Then, "when a properly supported motion for

summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant "must point to concrete evidence in the record" in that mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

### III.   Undisputed Facts[2]

Along with their motion for summary judgment and brief, Defendants filed a Statement of Undisputed Facts supported by evidentiary materials. (Doc. Nos. 53, 54.) Because Hall has failed to file a Statement of Facts in response to Defendants' submission, the facts as set forth in Defendants' statement will be deemed admitted pursuant to M.D. Pa. Local Rule 56.1. The undisputed facts are as follows.

Defendants are corrections officers at SCI-Albion. The remaining claim alleges their deliberate indifference to a serious medical need. The claim stems from Hall's transport from SCI-Smithfield to SCI-Houtzdale on October 2, 2007. Hall had knee surgery at Somerset Hospital on October 1, 2007. The physician's post-surgery orders provided for 24 hours in the infirmary, crutches for 4 weeks, very light weight bearing, a knee immobilizer for 10 days, a follow up appointment in 10 days, Tylenol and Ibuprofen. (Doc. No. 24, Ex. L at 9, Physician's Orders.)

Hall states that because no crutches were available, he left the hospital by wheelchair. He was taken to SCI-Somerset where he spent the night. The following morning, Hall was

---

[2] Unless otherwise noted, all citations to the record will be to the page numbers assigned to documents by CM/ECF, the Official Court Electronic Document Filing System.

transported from SCI-Somerset to SCI-Smithfield.  He was provided a cane either from Somerset Hospital or SCI-Somerset.  (Id., Ex. I, Visinsky Statement; Ex. N, 10/2/07 Progress Notes.)  At SCI-Smithfield, Hall was provided a wheelchair to sit in while he awaited transfer back to SCI-Houtzdale.  (Id., Ex. J, Banks Statement.)

Hall claims that Defendants Rhoades and Stagl forced him out of the wheelchair and made him walk to the transport bus and up the steps onto the bus.   He claims that this action denied, delayed and interfered with prescribed medical treatment.  (Doc. No. 1, Compl.; Doc. No. 54, Ex. C, Hall's Statement.)

According to the medical records, there was no order for a wheelchair.  In addition, limited ambulation was not prohibited and some weight bearing was contemplated and permitted.  (Doc. No. 54, Ex. L at 99.)  The Corrections Health Care Administrator at SCI-Somerset did not notify the officers transporting Hall to SCI-Smithfield of any medical restrictions.  (Id., Ex. I, Visinsky Statement.).  Likewise, Defendants were unaware of any medical restrictions for Hall when they arrived at SCI-Smithfield to transport him to SCI-Houtzdale.  (Id., Ex. F, Stagl Statement; Ex. H, Rhoades Statement.).  In fact, the Intake Lieutenant at SCI-Smithfield informed Defendant Rhoades that Hall did not require a wheelchair and could walk.  (Doc. No. 54, Ex. J, Banks Statement.)  Hall also acknowledges that Rhoades checked with someone at SCI-Smithfield before removing him from the wheelchair.  (Id., Ex. E, Pl.'s Dep. at 34.)  He further admits that he was assisted by Defendants in getting up from the wheelchair, boarding and exiting the bus.  (Id. at 31-32; Ex. F, Stagl's Statement; Ex. H, Rhoades Statement.)  There also was no existing history between Hall and Defendants such as misconducts, grievances or any other issues.  (Doc. No. 54, Ex. E at 58.)

**IV.     Discussion**

    **A.     Eighth Amendment**

A constitutional violation under the Eighth Amendment occurs in the medical context only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Hall must demonstrate a medical need that is objectively "sufficiently serious". Farmer v. Brennan, 511 U.S. 825, 834 (1994). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth Country Correctional Institution Inmates v. Lanzaro, 834 F.2d 326 (3d Cir. 1987). Next, Hall must establish that Defendants Rhoades and Stagl acted with subjective deliberate indifference in that they were aware of a substantial risk of serious harm to him, but disregarded that risk by failing to take reasonable measures to abate it. Id. Defendants must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and they must also draw the inference. Farmer, 511 U.S. at 837.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that

results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) or "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d at 103, 109 (3d Cir. 1990).

The undisputed facts in the instant case establish that following Hall's knee surgery on October 1, 2007, the physician's orders provided for 24 hours in the infirmary, crutches for 4 weeks, light weight bearing, a knee immobilizer for 10 days, a follow up appointment in 10 days, and pain medication. No crutches were available, so he left Somerset Hospital in a wheelchair. Defendants were not involved in this transport. Hall spent that evening at SCI-Somerset. Either Somerset Hospital or SCI-Somerset provided him with a cane, which he took with him when he left SCI-Somerset. (Doc. No. 54, Ex. I.) The Health Care Administrator at SCI-Somerset did not notify transport officers taking Hall to SCI-Smithfield of any medical restrictions with respect to Hall.

Although Hall was provided with a wheelchair to sit in once he arrived at SCI-Smithfield to await transfer back to SCI-Houtzdale, there were no doctor's orders that he be confined to or transported in a wheelchair. Defendants only involvement with Hall was when they arrived at SCI-Smithfield to transport him to SCI-Houtzdale. They were unaware of any medical restrictions concerning Hall. In fact, Defendant Rhoades was informed by the Intake Lieutenant at SCI-Smithfield that Hall did not require a wheelchair and was able to walk. Hall acknowledges that Rhoades did speak with someone at SCI-Smithfield before removing him from the wheelchair. (Doc. No. 54, Ex. E at 42, 56; Ex. H.)

Hall also verified that he had no history with Defendants in terms of misconduct, grievances or any other issues, and that Defendants assisted him in getting up from the

wheelchair, helped him up and down the steps on and off of the bus. (Doc. No. 54, Ex. D at 15, 17; Ex. E at 31, 35.) Based on the foregoing undisputed facts, it cannot be found that Defendants acted with deliberate indifference when they removed Hall from his wheelchair and had him walk up the steps onto the bus. They were unaware of any medical restrictions, the medical restrictions in place did not order a wheelchair or prohibit limited ambulation and light weight bearing, and Defendants were informed by another officer that Hall was able to walk. For these reasons, Defendants' motion for summary judgment will be granted.

    **B.**    **Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity from suit. Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2772, 73 L. Ed. 2d 396 (1982). A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim and that no reasonable official could believe their conduct was lawful. Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). As the Court has determined that there has been no violation of Hall's civil rights by Defendants, this issue need not be addressed. An appropriate order follows.